**WILMINGTON TRUST
CORPORATION,**
Petitioner

v.

**COMMONWEALTH of Pennsylvania,**
**Respondent.**

Commonwealth Court of Pennsylvania.

Argued June 7, 2004.

Decided July 21, 2004.

As Amended July 22, 2004.

---

Stephen C. Zivitz, Philadelphia, for petitioner.

Christopher M. Kazmaier, Harrisburg, for respondent.

BEFORE: McGINLEY, Judge, LEADBETTER, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge McGINLEY.

Wilmington Trust Corporation (Petitioner) petitions for review of the Order issued by the Board of Finance and Revenue (Board) on September 18, 2001, sustaining the Department of Revenue's (Department) assessment of its tax liability for the year ending December 31, 1998.

The single issue on appeal is whether Petitioner, a foreign corporation that elected to compute its tax liability using the single-factor apportionment formula[1], is entitled to prorate its tax for the period from January 1, 1998, to March 1, 1998?

The following facts have been stipulated to by both Petitioner and the Board: Petitioner is a bank holding company incorporated in the state of Delaware which first commenced business solely outside Pennsylvania on August 22, 1991. (Stipulation of Facts filed January 12, 2004, (hereinafter "Stipulation") at Paragraph 4 at 2; Reproduced Record (R.R.) at 2a).

Petitioner registered to do business in Pennsylvania on November 12, 1993. On March 1, 1998, it terminated its sole Pennsylvania employee. After March 1, 1998, Petitioner did not (i) own any property, (ii) maintain an office, (iii) employ any person, or (iv) perform any sales activity, in Pennsylvania. Stipulation at Paragraph 8 at 3; R.R. at 3a. Petitioner executed a Withdrawal Affidavit dated December 16, 1998, and filed it on December 18, 1998, with the Department of Revenue. Stipulation at Paragraphs 5–7 at 2; R.R. at 2a. Petitioner continued to do business during the period March 1, 1998, through December 31, 1998, in the State of Delaware and it continues to do business solely in Delaware to this day. Stipulation at Paragraph 9 at 3; R.R. at 3a.

For federal income tax purposes, Petitioner and its subsidiary corporations filed a consolidated federal corporate income tax return (Form 1120) with the federal government for the entire calendar year from January 1, 1998, through December 31, 1998. Stipulation at Paragraph 11 at 3; R.R. at 3a. Petitioner attached its federal

---

1. The single-factor apportionment formula refers to one of two formulas utilized by domestic and foreign corporations to determine the taxable portion of their capital stock value under Article VI of the Tax Reform Code of 1971 ("Tax Reform Code"), Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7601, *et seq*. The single-factor apportionment formula, authorized by Act of June 22, 1931, P.L. 685, *as amended*, 72 P.S. § 1896, and utilized by Petitioner in this case, is as follows:

Taxable assets (total assets—exempt assets) / Total Assets × actual value × 11 mils = Tax Due
As this Court explained in *Unisys Corp. v. Commonwealth*, 726 A.2d 1096 (1999), *rev'd*

on other grounds, 571 Pa. 139, 812 A.2d 448 (2002):

Under the original statutory scheme, the single factor formula applied only to the capital stock tax on domestic corporations and the three-factor formula applied only to the franchise tax on foreign corporations. By amendments in 1967, domestic corporations were given the option to calculate their taxes by the franchise tax formula. Then, in *Gilbert Associates, Inc. v. Commonwealth*, 498 Pa. 514, 447 A.2d 944 (1982), our supreme court held that foreign corporations, like domestic corporations, must be afforded the option of utilizing either the three-factor or the single fraction method. *Id.* at 1099, fn.5.

Form 1120 as an exhibit to its 1998 Pennsylvania tax report.

Petitioner elected to compute its 1998 Pennsylvania foreign franchise tax liability using the single-factor apportionment formula provided by 72 P.S. § 1896. Petitioner's single-factor apportionment fraction for 1998 was equal to the quotient of $41,231,382 (average assets taxable in PA) over $588,413,981 (average total assets), which resulted in a single-factor apportionment proportion of 0.070072, as reported by Petitioner. Stipulation at Paragraph 14 at 3; R.R. at 3a.

Petitioner's 1998 capital stock value, as reported and as settled, was $620,506,723, and its 1998 taxable value of capital stock based on the single-factor apportionment fraction was $43,480,147, as reported and as settled ($620,506,723 × .070072 = $43,480,147). Stipulation at Paragraph 15 at 4; R.R. at 4a. The product of the taxable value of capital stock of $43,480,147 multiplied times the 1998 tax rate of 0.01199 resulted in a foreign franchise tax liability of $521,327. Stipulation at Paragraph 16 at 4; R.R. at 4a.

As set forth in the 1998 tax report, Petitioner reported and paid 1998 foreign franchise tax in the amount of $84,269 by claiming entitlement to prorate the tax imposed on a daily basis for the 59 days from January 1 to March 1, 1998. Petitioner calculated the 1998 foreign franchise tax as reported and paid as follows: 59 days/365 days = 0.161644; (0.161644 × $521,327 = $84,269). Stipulation at Paragraph 17 at 4; R.R. at 4a.

On December 29, 2000, the Department of Revenue disallowed proration of the tax liability for the period from January 1 through March 1, 1998, and settled Petitioner's 1998 foreign franchise tax liability at $521,327. Stipulation at Paragraph 18 at 4; R.R. at 4a.

On January 12, 2001, Petitioner filed a Petition for Resettlement of its 1998 foreign franchise tax liability with the Board of Appeals disputing the settlement's disallowance of proration of the tax liability. Stipulation at Paragraph 19 at 4; R.R. at 4a. On March 2, 2001, the Board of Appeals issued a Decision and Order denying Petitioner's Petition for Resettlement. Stipulation at Paragraph 20 at 4; R.R. at 4a.

On May 25, 2001, Petitioner appealed the Decision and Order of the Board of Appeals by filing a Petition for Review with the Board, again disputing the settlement's disallowance of proration of the tax liability. Stipulation at Paragraph 21 at 4–5; R.R. at 4a–5a.

On September 21, 2001, the Board issued its decision denying the petition for review:

The Petitioner is not entitled to a prorated tax. In the case of a corporation ceasing business activities everywhere, tax due shall be prorated on a per day basis. In the case of a corporation withdrawing from this Commonwealth but continuing to do business elsewhere, the numerator of the property factor shall be prorated. 61 Pa.Code § 155.28(b)(2)(i) and (ii). In this case, the Petitioner is not ceasing business activities everywhere. In addition, the Petitioner used the single factor apportionment, accordingly, there is no property factor to prorate under 61 Pa.Code § 155.28(ii)[sic]. The Petitioner is precluded from prorating its tax due to its election to use single factor apportionment. Thus, the Board finds that the Petitioner is subject to tax for the full year ended 12/31/98.

Board Decision, September 21, 2001, at 5.

On appeal,[2] Petitioner contends that the Board erred when it refused to allow Petitioner to prorate its 1998 tax liability to reflect the 59-day period from January 1, 1998, to March 1, 1998, the date it ceased business activities in Pennsylvania.

Petitioner argues that it is entitled to prorate its tax liability under the clear and unambiguous language of Section 602(g) of the Tax Reform Code[3] which provides:

*In the event that a domestic or foreign entity is required to file a report pursuant to 601(b)[4] on other than an annual basis, the tax imposed by this section,* including the minimum tax set forth in subsection (i), *shall be prorated to reflect the portion of a taxable year for which the report is filed by multiplying the tax liability by a fraction equal to the number of days in the taxable year divided by three hundred sixty-five days.* (Emphasis added).

72 P.S. § 7602(g).

Petitioner maintains that it was "required to file a report pursuant to 601(b) on other than an annual basis." Specifically, Petitioner points to Pennsylvania Department of Revenue Regulation, 61 Pa. Code § 151.11 (hereinafter "Regulations"), which sets forth the following procedure with respect to a foreign corporation that withdraws from Pennsylvania during a taxable year:

**151.11 Termination.** (1) General. A corporation which desires to terminate its responsibility to file annual Reports, ... may terminate such filing responsibility by submitting the required information and documentation. The information and documentation which is required depends upon the nature of the corporation.

. . . .

(3) A foreign corporation shall file the following:

(i) A Withdrawal Affidavit (Form RCT–407).

(ii) Corporation Tax Reports for the current year to the date business activities ceased and the corporation no longer employed property in this Commonwealth, including an explanation of the disposition of assets located in this Commonwealth.

61 Pa.Code § 151.11.

Petitioner maintains that it ceased activities in Pennsylvania on March 1, 1998, and filed the requisite reports and documentation pursuant to 61 Pa.Code § 151.11, i.e., a Withdrawal Affidavit (Form RCT–407) and 1998 Short Tax Period Report through March 1, 1998. Thus, under the clear and unambiguous language of Section 602(g) of the Tax Reform Code, 72 P.S. § 7602(g), Petitioner argues it was removed from the active tax rolls of the Department and

---

**2.** Our scope of review of Board decisions is very broad; although cases from the Board are addressed to our appellate jurisdiction, we essentially function as a trial court. *Cooper v. Commonwealth*, 700 A.2d 553 (Pa. Cmwlth.1997). Because Wilmington Trust is appealing a decision of the Board, it has the burden of proof. *Ernest Renda Contracting Co., Inc., v. Commonwealth*, 516 Pa. 325, 532 A.2d 416 (1987).

**3.** Throughout its Briefs, Petitioner mistakenly refers to the Tax Reform Code of 1971, 72 P.S. §§ 7101–10004, as the "Fiscal Code."

The Fiscal Code, Act of April 9, 1929, P.L. 343, *as amended,* refers to the statutory provisions at 72 P.S. §§ 1–1804.

**4.** Section 601(b) of the Tax Reform Code, 72 P.S. § 7601(b) provides:

(b) it shall be the duty of every domestic and foreign entity to make for each taxable year, as defined in section 401(5), a written report verified in accordance with the requirements of the department on a form or forms to be prescribed and furnished by it setting forth the information required.

entitled to prorate its taxes on a daily basis for the 59 days it conducted business activities in Pennsylvania.

Petitioner contends that the Board erred when it ignored the clear language of Section 7602(g), and based its decision instead on the fact that (1) it was not a corporation which ceased business everywhere; and (2) it did not use the three-factor apportionment formula when computing its taxable capital stock. According to the Board, these are the only two instances under 61 Pa.Code § 155.28 that allow for proration.[5]

Relying on *Commonwealth v. After Six, Inc.*, 489 Pa. 69, 413 A.2d 1017 (1980), and *Quality Markets, Inc. v. Commonwealth*, 99 Pa.Cmwlth. 537, 514 A.2d 228 (1986), the Commonwealth of Pennsylvania (Commonwealth) contends that Petitioner is not entitled to have its tax liability prorated on a daily basis because when it elected to use single-factor apportionment to apportion its capital stock value, it voluntarily elected to be taxed on a capital stock tax/property tax basis rather than on a franchise tax basis. The Commonwealth argues that because Petitioner elected to use the single-factor apportionment formula, it must be placed on the "same footing" as a domestic corporation being taxed on a property tax basis.

In *After Six, Inc.*, the issue was whether the Taxpayer, a domestic corporation engaged in the manufacture of men's formal clothing, could retain certain exclusions available to domestic corporations even though it voluntarily elected to use the franchise tax formula (the three-factor apportionment method) for calculating the value of its capital stock.[6] Specifically, After Six argued that it was entitled to deduct from the value of its capital stock the value of the capital stock of its domestic and foreign subsidiaries.[7] However,

---

5. 61 Pa.Code § 155.28(b), relied on by the Board, provides in pertinent part:

**155.28. Capital stock value methods—fixed formula.**

. . . .

(b) Short taxable year.

. . . .

(2) Last year companies.

(i) In the case of a corporation ceasing business activities everywhere, tax due shall be prorated on a per day basis.

*Example.* The taxpayer, a domestic corporation which files on a calendar year basis, is not entitled to apportionment and has no exempt assets. Its capital stock value for the calendar year 1985 was $20,000. Taxpayer made its final distribution on August 31, 1985. Its tax, at the rate of 10 mils, would be $133.15, computed as follows:
$20,000 at 10 mils = $200
$200 × 243/365 days = $133.15

(ii) In the case of a corporation withdrawing from this Commonwealth but continuing to do business elsewhere, the numerator of the property factor shall be prorated.

6. The franchise tax is designed to measure the foreign corporation's business activity in Pennsylvania. *Commonwealth v. After Six, Inc.*, 489 Pa. at 76, 413 A.2d at 1020. Under the three-factor apportionment method, the three factors taken into consideration in arriving at the apportionment factor are: (1) tangible property; (2) payroll, and (3) sales. 72 P.S. § 7401(3)2.(a)(9)-(18). The tax due is calculated by multiplying the apportionment factor by the capital stock value and the applicable tax rate:

Tangible property in PA / Total tangible property = % (1)
    +
Wages, salaries, etc. assignable in PA / Total wages, salaries, etc. = % (2)
    +
Sales assignable in PA / Total sales = % (3)
% (1) + % (2) + % (3) / 3 = apportionment factor × capital stock value × tax rate = Tax Due.

7. After Six reported the actual value of its capital stock at $12,300,000, and then deducted $8,700,000, the claimed actual value of the capital stock of its eleven domestic and foreign subsidiaries leaving a balance of $3,600,000 to which it applied an apportionment factor of .784401 obtained by using the

the Court noted that an exemption for the value of its subsidiaries' capital stock was only available to domestic corporations. Our Supreme Court held that After Six had to forego such exclusions since it elected to be treated as a foreign corporation when it used the three-factor method: "[i]t thus seems clear that a domestic taxpayer who elects to use the franchise tax method must be placed on exactly the same footing as a foreign corporation paying its franchise tax." *Id.* at 81, 413 A.2d at 1023.

Similarly, in *Quality Markets, Inc.,* 99 Pa.Cmwlth. 537, 514 A.2d 228, the taxpayer, Quality Markets, was a foreign corporation engaged in the operation of grocery stores located in New York and Pennsylvania. Quality Markets filed a Franchise Tax Report for the year ending January 30, 1982. Quality Markets computed its tax liability according to the three-factor apportionment formula, but later petitioned for a refund claiming the right to compute its tax under the single-factor apportionment formula. *Quality Markets, Inc.,* 514 A.2d at 229.

Quality Markets sought to apply the single-factor apportionment formula on the assumption that its intangible assets (cash, accounts receivable, common stocks, stock and investment certificates, a buying cooperative, capital leases, deferred income tax benefits, inter company receivables, prepaid real estate taxes, and prepaid miscellaneous expenses) were *not* includable in the calculation of its capital stock value. Quality Markets argued that taxation of its

intangible assets "would result in taxation of assets unconnected with the Commonwealth." This Court noted that the option given to both foreign and domestic corporations is in the nature of an exemption or deduction. If Quality Markets had elected to compute its taxes using the three-factor method, which considers only the portion of the taxpayer's tangible property, wages and sales attributable to Pennsylvania, then only its Pennsylvania related assets would have been taxed. However, because Quality Markets chose to be taxed under the single-factor apportionment formula it was legally and constitutionally required to include its intangible assets in the computation of its franchise tax due. *Quality Markets, Inc.,* 514 A.2d at 231–232.

This Court does not agree with the Commonwealth that these cases preclude Petitioner from prorating its tax liability on a daily basis under Section 602(g), 72 P.S. § 7602(g). In this case, unlike in *After Six, Inc.* and *Quality Markets, Inc.,* Petitioner does not claim that it should not be treated as if it were a domestic corporation for the purposes of determining which assets are exempt from taxation and for the purpose of determining the proportion of the value of its capital stock, which is subject to taxation under Section 602(a) of the Tax Reform Code, 72 P.S. § 7602(a) and 61 Pa.Code § 155.10(2). Rather, Petitioner seeks to prorate the tax which was imposed by the computations in Section 602 of the Tax Reform Code, 72 P.S. § 7602, to reflect the actual number of days it worked in Pennsylvania in 1998, as

three-factor apportionment formula. *After Six,* 489 Pa. at 77, 413 A.2d at 1021. The Supreme Court noted that even if After Six was permitted to deduct the value of the capital stock of its subsidiaries, its calculation was incorrect because any exemptions for non taxable assets are to be subtracted *from total assets in the numerator* of the fraction and not by deducting the value of the exemption from the actual value of the capital stock. *Id.* at

83, n. 12; 413 A.2d at 1024, n. 12 (Emphasis added). It should be noted that as of 1984, "capital stock value" is determined under Section 601(a) of the Tax Reform Code, 72 P.S. § 7601(a), by application of a defined and fixed formula. Act of December 23, 1983, P.L 360, No. 89. "Actual value" as the standard in determining the value of a corporation's capital stock, has been eliminated. *See* 61 Pa.Code § 155.21(b).

reflected in its Withdrawal Affidavit (Form RCT–407). Petitioner contends that time proration is a separate statutory step in calculating the tax ultimately payable to the Commonwealth and that this step is separate and independent of the apportionment method used to compute the taxable value of its capital stock under Section 602 of the Code, 72 P.S. § 7602. This Court agrees with Petitioner.

The Commonwealth's position, like the Board's, does not contemplate Section 602(b)(1)(ii) of the Tax Reform Code, 72 P.S. § 7602(b)(1)(ii), which clearly provides that a foreign corporation electing to pay its tax under the single-factor apportionment formula is only treated as a domestic corporation *for the express, limited purpose of determining: (1) which of its assets are exempt from taxation and (2) the proportion of the value of its capital stock which is subject to taxation.* Section 602(b)(1)(ii) of the Tax Reform Code, 72 P.S. § 7602(b)(1)(ii), provides:

> Any foreign corporation ... subject to the tax prescribed herein may elect to compute and pay its tax under Section 602(a): Provided, That any foreign corporation ... electing to compute and pay its tax under section 602(a) shall be treated as if it were a domestic corporation *for the purpose of determining which of its assets are exempt from taxation and for the purpose of determining the proportion of the value of its capital stock value which is subject to taxation.* [Emphasis added].[8]

Subsection (g) of Section 602, 72 P.S. § 7602(g), provides the formula by which the tax imposed by Section 602(a) shall be prorated. Section 602(g) specifically states that the tax shall be prorated "to reflect the portion of a taxable year for which the report is filed by multiplying the tax liability by a fraction equal to the number of days in the taxable year divided by three hundred sixty-five days." Importantly, Section 602(g) does not differentiate between a foreign corporation electing to use the single-factor apportionment formula and a foreign corporation which elects to use the three-factor apportionment formula. Nor does it prohibit a foreign corporation which elects to utilize the single-factor apportionment formula from prorating its taxes based on the number of days it conducted business in this state. Section 602(g) simply contains no provision prohibiting its application to a foreign corporation which elects to be treated as a domestic corporation for purposes of *determining the proportion of the value of its capital stock that is subject to tax, and which, if any, of its assets are exempt.*

The Commonwealth, nevertheless, maintains that even though *After Six, Inc.* and

8. 61 Pa.Code Section 155.10(2), contains the identical language:

> Single factor apportionment.
> (a) *General.*
> (1) *All corporations.* Corporations subject to either the Capital Stock or Foreign Franchise Tax, except regulated investment companies shall be entitled each taxable year to use the single factor fraction. Taxpayers electing to use the single factor fraction for a taxable year shall be prohibited from simultaneously using three factor apportionment for the same taxable year, and use of the single factor fraction shall be limited to the Capital Stock or Foreign Franchise Tax, and will have no applicability to the Corporate Net Income Tax. See the Act of June 22, 1931 (P.L. 685, No. 250) (72 P.S. § 1896).
>
> (2) *Foreign corporations.* Foreign corporations may elect to compute and pay Foreign Franchise Tax on a property tax basis and utilize the single factor fraction. A foreign corporation electing to do so shall be treated as if it were a domestic corporation *for the purpose of determining which of its assets are exempt from taxation and for the purpose of determining the proportion of the value of its capital stock which is subject to taxation.* [Emphasis added].

*Quality Markets, Inc.* dealt with the election of apportionment methods, the impact of the election must carry all the way through to the *payment* of tax liability. The Commonwealth argues, in essence, that once a foreign corporation elects to use the single-factor apportionment formula it will automatically be considered to be on equal footing with a domestic corporation for all *other* purposes under Section 602 the Tax Reform Code, 72 P.S. § 7602, including time proration under Section 602(g) of the Tax Reform Code, 72 P.S. § 7602(g). To accept the Commonwealth's position, however, would render Section 602(g) meaningless in every case where a foreign corporation, withdrawing from this Commonwealth and continuing to do business elsewhere, elects to use the single-factor apportionment formula.

Absent clear legislative intent to the contrary, this Court rejects the Commonwealth's invitation to view the election of the single-factor apportionment formula by a foreign corporation as an automatic bar to its subsequent entitlement to prorate its tax liability based on the number of days it conducted business activities in this state. This Court also declines to presume, as the Commonwealth suggests, that because Petitioner elected the formula which was originally enacted to apportion a domestic corporation's capital stock, that Petitioner must now be deemed to have conducted business in this state for the entire year in 1998, when in fact the Withdrawal Affidavit, and stipulated facts indicate otherwise.

Moreover, this Court is well aware that although statutory construction is a matter for the courts, great weight will be given to the interpretation of the agency administering the statute in question. *Shawnee Development, Inc. v. Commonwealth*, 799 A.2d 882 (Pa.Cmwlth.2002), *affirmed*, 572 Pa. 665, 819 A.2d 528 (2003). However, in this case, because the Board did not refer to Section 602(g) or Section 602(b)(1)(ii) of the Tax Reform Code, 72 P.S. §§ 7602(g), 7602(b)(1)(ii) or Section 155.10(a)(2), 61 Pa. Code § 155.10(a)(2), which go to the heart of the dispute, this Court is hard pressed to defer to the Board's conclusion that Petitioner is precluded from prorating its taxes on a daily basis.

The Regulations relied on by the Board explain that (i) when a foreign or domestic corporation ceases business activities everywhere, the taxes are prorated on a per day basis, and (ii) when a foreign corporation **which elects to use the three factor apportionment formula,** withdraws from the Commonwealth, but continues to do business elsewhere, the numerator of the property factor shall be prorated. The Regulations do not directly address the situation where a foreign corporation **which elects to use the single-factor apportionment formula,** withdraws from the Commonwealth but continues to do business elsewhere. Neither the Commonwealth nor the Board points to anything inherently time sensitive in the single-factor apportionment formula that would justify prohibiting a foreign corporation from prorating its ultimate tax liability to reflect the actual number of days it conducted business here. Reality and practicality must be afforded their due.

In addition, while the Board summarily dismissed the proposition that Petitioner should not be treated the same as a domestic corporation which ceases business activities everywhere for purposes of proration, it is not abundantly clear to this Court how the two differ. In both instances, the corporation conducts business in Pennsylvania for part of the year, but stops short of a full year. In both instances, the corporation is required to submit a tax report for the current year to the date business activities ceased. In both cases, the corporation is removed from the active tax rolls of the Department. 61 Pa.Code

§ 151.11. For purposes of computing the ultimate tax liability, why shouldn't both be entitled to prorate their franchise/capital stock tax liability on a *prorata* basis, which is precisely what Section 602(g) provides? This Court believes similar treatment is appropriate for similarly situated taxpayers.

As our Supreme Court stated in *Commonwealth v. Rieck Investment Corp.*, 419 Pa. 52, 213 A.2d 277 (1965):

> We are guided in analyzing the statutory provisions here applicable by certain well settled principles of statutory construction ... (a) that a taxing statute must be strictly construed and any doubt or uncertainty as to the imposition of a tax must be resolved in favor of the taxpayer; (b) even though a court may be convinced that the legislature intended to enact something different from that which it did, if the language of the statute is clear and unambiguous the statute must be given its plain and obvious meaning; (c) the legislature must be intended to mean what it has plainly expressed.... It matters not, in such a case, what the consequences may be; (d) it is not for the courts to add, by interpretation, to a statute, a requirement which the legislature did not see fit to include.

*Rieck Investment Corp.*, 419 Pa. at 59–60, 213 A.2d at 281 (1965) (quotations and citations omitted).

Applying these principles, this Court finds that the language of Section 602(g) contains no ambiguity or anomaly, and we therefore apply it according to its terms. *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989).

This Court agrees with Petitioner and holds that the legislative intent of Section 602(g) is that the franchise tax liability of a foreign corporation such as Petitioner should be based on the period of time during which the corporation actually exercises its franchise rights or right to conduct business in Pennsylvania. A foreign corporation conducting business in Pennsylvania for less than a full year (e.g. one day, one week, or one month) should pay a proportionally smaller tax than a corporation present in Pennsylvania during the whole year regardless of the apportionment formula it chooses to apportion the value of its capital stock. A foreign corporation which withdraws from the Commonwealth and is required to file a corporation tax report for a period less than a year is entitled to prorate its tax under the plain meaning of Section 602(g). Therefore, Petitioner is entitled to prorate its taxes to reflect the 59 days from January 1, 1998, to March 1, 1998, it conducted business in Pennsylvania in accordance with the formula set forth in Section 602(g).[9]

---

9. The Commonwealth contends since Petitioner used the entire 365 day calendar year as its "taxable year" to report taxable income to the federal government in 1998, it was required under Section 401(5), 72 P.S. § 7401(5), to file its 1998 capital stock/franchise tax report for the exact 365 day period, *not* on a short year of 59 days. The Commonwealth argues, as a result, prorating on a daily basis has no mathematical effect on Petitioner's tax liability. (Section 602(g) defines the proration fraction as "equal to the number of days in the taxable year divided by three hundred sixty-five days" so the fraction of 365 divided by 365 would equal one). The argument is unconvincing. As previously pointed out, the Regulations require a foreign corporation which withdraws from the Commonwealth before year's end to file a short tax report for the current year *to the date business activities ceased* in Pennsylvania. There is no dispute that Petitioner filed a 1998 Pennsylvania short tax report for 1998, to the date business activities ceased in Pennsylvania on March 1, 1998, and there is nothing to indicate that the Department did not accept the short tax report and remove Peti-

For the foregoing reasons, the petition for review of Petitioner, from the decision of the Board resettling Petitioner's capital stock tax liability for the year ending December 31, 1998, is granted. The case is remanded to the Board to prorate Petitioner's capital stock tax liability on a daily basis for the 59 days it conducted business activities in Pennsylvania from January 1, 1998, to March 1, 1998.

## ORDER

AND NOW, this 21st day of July, 2004, the petition for review of Wilmington Trust, Inc., from the decision of the Board of Revenue and Finance at BF & R Docket No. 0101840, which resettled Wilmington Trust Inc.'s capital stock tax liability for the year ending December 31, 1998, is granted. The case is remanded to the Board of Finance and Revenue to prorate Wilmington Trust's capital stock tax liability on a daily basis for the 59 days it conducted business activities in Pennsylvania from January 1, 1998, to March 1, 1998. Any party may file exceptions hereto within THIRTY (30) DAYS of the filing of this Order pursuant to Pa. R.A.P. 1571. Any issue not raised by exception shall be waived.

tioner from the tax rolls as of that date. In requiring a foreign corporation to file a short tax report and withdrawal affidavit, the Regulations do not differentiate between a foreign corporation which ceases business activities all together, and one that continues to conduct business elsewhere. In both instances, the short tax report and withdrawal affidavit must be filed if a foreign corporation wishes to terminate its responsibility to file annual reports and be removed from the tax rolls. Section 602(g) clearly provides that "in the event ... a foreign entity is required to file a report ... on other than an annual basis, the tax imposed under this section shall be prorated to reflect *the portion of a taxable year* for which the report is filed." 72 P.S. § 7602(g). (Emphasis added). Therefore, even if Petitioner's taxable year was January 1, 1998, through December 31, 1998, the Code specifically authorizes Petitioner to prorate its tax to reflect *the portion* of that taxable year for which its short form was filed, i.e., 59/365.